ALBERT FERRARI, Plaintiff-Appellant, v. KENNIS BRANNOCK et al., Defendants-Appellees—(JOSEPH BORN, Defendant-Separate Appellant.)

(No. 54121;

First District—March 9, 1971.

*Rehearing denied April 14, 1971.*

Howard & Decker, of Chicago, (David A. Decker, of counsel,) for appellants.

Phillip E. Howard, of Chicago, (Phillip A. Doran, of counsel,) for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Albert Ferrari, instituted a cause of action for negligence against defendant, Joseph Born, and Born's employers, defendants, Kennis and Mary Brannock.

At the close of all the evidence the trial court directed verdicts in favor of the Brannocks. The jury returned a verdict in favor of Ferrari and against Born in the amount of $10,500 upon which judgment was entered. Ferrari appeals from the order directing verdicts in favor of the Brannocks and Born appeals from the judgment entered against him and in favor of Ferrari.

The Brannocks owned a three-story building, the first floor of which was divided into five or six store spaces and leased to commercial enterprises. Ferrari leased one of the store spaces from the Brannocks to conduct his grocery business.

Due to the nature of Ferrari's business a large number of wood and cardboard boxes would accumulate behind the store each week. Since the lease agreement contained no provision for the removal of trash, Ferrari paid Born, the Brannocks' janitor, fifteen dollars a month to dispose of the boxes. Born would dispose of the boxes by burning them in the incinerator and the boiler which were both located in the basement.

The boiler was situated in a pit approximately three feet deep surrounded by a cement wall. The boiler was in constant operation providing steam heat in winter and hot water the entire year. During the summer months the switch was "pulled" so that the boiler would not heat the building. Born testified that when he burned boxes in the boiler during the summer, he would only place a few in at a time to prevent the pressure from rising too high. The boiler was equipped with a pressure gauge and when it registered a high pressure, Born would discontinue placing boxes into the boiler until the pressure waned.

Born continued to burn the boxes for Ferrari until the winter of 1960-61 when Ferrari refused to increase his remuneration from fifteen to twenty-five dollars a month. Subsequently, Ferrari burned the boxes himself. Initially, Ferrari used only the incinerator to burn the boxes. When the boxes were wet he would store them to dry before placing them in the incinerator.

Ferrari testified that Born, upon seeing him utilize this procedure, advised him to burn the wet boxes in the boiler. However, Born testified that while he knew Ferrari was burning the wet boxes in the boiler, he never advised him to do so.

Kennis Brannock testified that he had previously told Ferrari to burn the boxes and was aware of the fact that Ferrari was burning them in

the basement. However, he had never told Ferrari not to use the boiler to burn the boxes.

On August 2, 1961, the boiler was switched to its summer position thereby preventing the pressure from escaping into the heating system. Ferrari placed four to six wet boxes in the boiler and after closing the door he walked four or five feet away. Soon thereafter Ferrari heard an explosion and noticed smoke, fire and ash coming toward him. After going upstairs and calling the fire department, he returned to the basement where the visibility was now somewhat decreased due to smoke and ash. However, he no longer saw any evidence of fire or flame. He approached the boiler and stepped into the pit. Due to the explosion the pit was now full of scalding hot water and Ferrari sustained severe burns about the ankles necessitating hospitalization.

Ferrari then initiated the instant suit against defendants resulting in the judgment against Born and the directed verdicts at the close of all the evidence in favor of the Brannocks. On appeal Ferrari contends that the court erred in directing verdicts in favor of the Brannocks and that therefore he is entitled to a judgment in his favor or in the alternative, a new trial.

On appeal Born contends that the trial court erred in entering judgment against him and in favor of Ferrari, since he owed no duty to warn Ferrari with respect to the boiler's summertime use, and in any event, Ferrari was contributorily negligent.

OPINION

Since the contentions raised by Born pertain directly to the issue of whether in fact liability is existent upon any of the defendants, we shall discuss them first.

Born's initial contention is that he owed no duty to warn Ferrari with respect to the boiler's use, since Ferrari was at best a permissive user of the boiler. However, Ferrari maintains that whatever his status, it was incumbent upon Born to warn him of the latent danger in using the boiler during the summer months.

In support of Born's contention the following cases are cited: *Saffer v. Molter* (1905), 124 Ill.App. 21, *Hansen v. Gromoll* (1924), 232 Ill.App. 485, *Culver v. Kingsley* (1898), 78 Ill.App. 540, *Saunders v. Smith Realty Co.* (1913), 84 N.J.L. 276, *Consolidation Coal Co. v. Zarvis* (1927), 222 Ky. 238, and *Cameron v. Feely* (1917), 208 Ill.App. 521. The above cited cases are authority for the proposition that a duty to exercise ordinary care in maintaining that part of the premises retained under the landlord's (landlord's agent's) control extends only to those portions reserved for the common use of the tenants. While Born and Ferrari disagree as to the status of the boiler area as a common-way, we find an

additional factor determinative of the issue as to the extent of the duty owed Ferrari.

■■ The cases cited by Born pertain to factual circumstances wherein the injury giving rise to the cause of action arose out of the dangerous condition of the premises and the landlord's failure to maintain the premises in a safe condition. Such circumstances are not analagous to the instant case. The injury in the case at bar arose not out of the landlord's failure to maintain the premises, but rather his failure to warn Ferrari, through his employee Born, as to the use of an instrumentality on the premises. Since the cases cited by Born limit the landlord's duty only to the extent of maintaining the premises, we deem the cited authority inapplicable to present case, and find that Ferrari was owed a duty of ordinary care by the Brannocks' agent Born to warn him as to the proper use of the boiler.

Born next contends that the verdict was against the manifest weight of the evidence since Ferrari was contributorily negligent as a matter of law in re-entering the area of the explosion where danger could be anticipated after having left a place of relative safety.

In *Carter v. Winter* (1965), 32 Ill.2d 275, cited by Born, the court stated at page 284:

> "One cannot knowingly expose himself to danger and subsequently recover damages for an injury which, by the employment of reasonable precaution and circumspection, he might have entirely avoided."

In support of the application of this rule to the facts in the instant case, Born cites *Withey v. Illinois Power Co.* (1961), 32 Ill.App.2d 163; *Cronin v. Brownlie* (1952), 348 Ill.App. 448; *Pegram v. Seaboard Airline Ry. Co.* (1905), 139 N.C. 303; *Pike v. Grand Trunk Ry. Co. of Canada* (1889), 39 Fed. 255; *Logan v. Wabash Ry. Co.* (1902), 96 Mo.App. 461; and *Berg v. Great Northern Ry. Co.* (1897), 70 Minn. 272. In all of the above cited cases except *Withey* the plaintiffs were denied recovery on the ground that they had knowledge of the dangerous circumstances which gave rise to their injuries and voluntarily exposed themselves to it thereby breaking the causal chain of events. In *Withey* the plaintiff was injured while climbing a television antennae tower and coming into contact with an electrical power line. Plaintiff had lived in his trailer next to the power line and tower for approximately nine months. The court held that while plaintiff maintained that he had never noticed the power line before the occurrence, he was still guilty of contributory negligence, since the "danger should have been apparent to a person of ordinary intelligence."

■■ In the instant case there was evidence tending to show that when

Ferrari returned to the boiler area the conflagration had ended unlike the factual circumstances in *Pike, Logan, Pegram,* and *Berg, supra.* There is also evidence tending to show that while the visibility in the boiler area was clear enough for Ferrari to find his way, it was decreased to the extent that it concealed the scalding hot water in the pit. Nor could such danger be readily anticipated by Ferrari, as suggested by Born, due to Ferrari's limited knowledge of boiler operations and the fact that all apparent indications of danger had passed except for the lingering smoke. From these and other facts we conclude that Ferrari was without knowledge or basis for anticipation of the existent dangerous condition which might have ordinarily rendered him contributorily negligent.

Therefore, the trial court correctly entered judgment on the verdict in favor of Ferrari and against Born.

Ferrari contends that the trial court erred in directing verdicts in favor of the Brannocks. In *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494 the court stated at page 510:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■■ The *Pedrick* standard must be applied to the evidence on the issue of whether Born's negligent omission was imputable to the Brannocks. The negligence of the servant is imputable to the master where it was committed within the scope of the employment contract. *Palmer v. Miller* (1942), 380 Ill. 256.

The parties do not dispute the fact that at the time of the occurrence, Born was in the employ of the Brannocks as their janitor on the premises. However, the Brannocks contend that the negligence of Born occurred outside the scope of his employment and therefore, is not imputable to them.

Born testified that it was his duty to keep the building in good condition. Pursuant to this duty, he was charged with the operation of the boiler and would make the necessary adjustments and settings on the boiler to facilitate its best use. He also testified that he had the authority to call directly for repair service if the boiler malfunctioned and the Brannocks could not be reached. Among his other duties, he testified that he was responsible for disposing of the garbage from the apartments on the second and third floor which he would burn in the basement incinerator.

Brannock testified that Born's duties entailed care and maintenance

of the building including the boiler and incinerator and that he would rely on Born to see that things were done correctly.

From these facts we do not find that the evidence so overwhelmingly favors the Brannocks that no contrary verdict based on that evidence could ever stand. Nor do we find the case of *Johanson v. Johnston Printing Co.* (1914), 263 Ill. 236 analagous to the instant suit. In *Johanson* it was clear that the employee owed no duty to his employer to aid the plaintiff.

██ The Brannocks have failed to meet the standard as enumerated in *Pedrick, supra,* and we hold that the trial court erred in directing verdicts in their favor.

In view of the foregoing, we affirm the $10,500 judgment in favor of Ferrari against Born and reverse the judgment in favor of the Brannocks against Ferrari and remand the cause for new trial.

Affirmed in part; reversed and remanded in part.

LEIGHTON, P. J., and McCORMICK, J., concur.