LILLIAN FINESILVER, Plaintiff-Appellee, *v.* CATHERINE CAPORUSSO, Defendant-Appellant.

(No. 53772;

First District—August 27, 1971.

MORAN, J., dissenting.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Donald J. Duffy, of counsel,) for appellant.

Michael H. Postilion, of Chicago, (Aaron P. Brill and Harold Cowen, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Lillian Finesilver, brought this action to recover damages for personal injuries sustained by her in a fall on the premises of defendant, Catherine Caporusso, her landlady. The jury returned a verdict for plaintiff for $6000, upon which the court entered judgment. The defendant appeals.

Plaintiff was a tenant in the apartment building owned by defendant located at 1000 California, Chicago, Illinois. Defendant's premises consisted of a three-story apartment building and an adjacent one-story building, the roof of which abutted the rear stairs of the apartments. This roof was divided into a concrete patio section and a tarred section by a

fence extending the width of the roof. The concrete section was for the use of any of the tenants. This fence consisted of two horizontal rails attached to four posts with several vertical slats between them. The fence posts extended well above the top rail and the tops of these posts are used as an attachment for one end of a clothesline. Each post is embedded in a concrete base which forms a ridge several inches high beneath the lower rail, Plaintiff's apartment was on the second floor and had a door onto the concrete patio. Several of the windows to plaintiff's apartment were accessible from the tarred section of the roof and during the thirty-three years she had lived in the building, and for a long time before defendant became its owner, plaintiff had climbed the fence to go onto this section to wash her windows. It does not appear at what interval of time plaintiff washed her back windows. Her front windows were washed by a professional window washer.

The screens and the installation of screens were provided as a part of the maintenance of the building by the building owner. On the occasion in question, there was a partial opening in the screen which admitted flies to the plaintiff's kitchen. She attempted to take the screen down from the inside by pressing on it, but was unsuccessful. During the afternoon of September 16, 1962, plaintiff climbed over the fence to push the screen on her kitchen window from the outside. After pushing the screen down, she started to climb back over the fence. She placed one foot over the fence and stepped on a concrete base of a fence post while she brought her other leg over the fence. Her foot slipped off the concrete base and she fell on her left side, breaking her hip.

Plaintiff testified that on many occasions she suggested to Joe Caporusso, defendant's brother and maintenance man on the building and also a tenant of the building, that he make a gate in the fence to make it easier for her to get to her windows. She suggested this to him whenever she was washing her windows and he was present. Defendant testified, however, that she never saw plaintiff washing these windows, that she never learned from any source how plaintiff washed her windows. Joe Caporusso did not testify. The fence was originally built to prevent children from going onto the tarred section of the roof. At the time of the accident the ages of the only two children living in the building were fourteen and fifteen. The fence was in existence in 1945 when defendant bought the building.

At the conclusion of plaintiff's evidence, defendant made a motion for a directed verdict which was denied. Defendant introduced no evidence. Defendant's theory on appeal is that the trial court erred in denying her motion because (1) the evidence failed to prove the breach of a legal

duty owed to the plaintiff and (2) the evidence was clear that plaintiff was guilty of contributory negligence as a matter of law.

There is no allegation in the complaint nor attempt to prove that the fence itself was defective. Rather, plaintiff contends that defendant knew of and acquiesced in the use of the tarred section of the roof in order to wash her windows and knew that she crossed the fence for that purpose. Plaintiff further urges that it was the duty of the defendant to make it reasonably safe for her to cross the fence.

■■ The applicable rule of law is set forth by the plaintiff in that the general duty imposed upon a landlord is to use ordinary care to keep a portion of the premises reserved for the common use and under the landlord's control in a reasonably safe condition. (See *Loveless v. Warner*, 37 Ill.App.2d 204, 185 N.E.2d 392, and cases cited therein. The plaintiff's contention is that her occasional use of the fenced off portion of the roof created a customary use of which the defendant was aware, giving rise to a duty to exercise ordinary care or to prohibit the use, citing North Chicago Street Railroad Co. v. Kaspers, 186 Ill. 246, 57 N.E. 849, in which case the defendant's employees customarily helped patrons to get on moving railroad cars.

■■ Under the undisputed evidence it does not appear that the fence and the fenced off area was a portion of the premises reserved for common use, thereby giving rise to the duty to the landlord to keep it in a reasonably safe condition. The best that can be said for the plaintiff is that the landlord tolerated her occasional use of a roof area, which had been fenced off for the purpose of prohibiting access, in order to permit the plaintiff to wash her back windows. We are not aware of any cases which impose the duty upon an owner of property to prohibit access to private areas. We can find no implied invitation from the fact that a fence without a gate was erected and that the area was roofed rather than covered with concrete as was the adjoining patio area. We are not aware of any duty upon the landlord to provide access to the exterior of windows for the purpose of washing them.

In *Culver v. Kingsley*, 78 Ill.App. 540, the landlord had two tenants each of whom occupied one story of the frame home. A portion of the first story had a flat, shed roof and the plaintiff frequently used this roof as a place for drying clothes. This roof was not included in the lease. Plaintiff's suit was for personal injuires sustained when she fell through a portion of the roof and the First District set aside a verdict for the plaintiff saying: "There is evidence of a permission to appellee to thus use the roof. But such permission would not of itself impose upon the landlord an obligation to keep it in repair for that purpose."

Subsequently, this court in *Hansen v. Gromoll,* 232 Ill.App. 485, reversed a judgment for the plaintiff where the landlord of an apartment building permitted one of several tenants to have exclusive use of a storage locker, not leased to her, in which the plaintiff contacted an exposed electric wire, holding that the landlord was not guilty of any negligence toward the plaintiff.

■■ Accordingly, we find no evidence has been presented which raises a duty on the part of the landlord to provide a reasonably safe access to the plaintiff. The plaintiff was either a licensee or a trespasser on the portion of the roof in question and she was not injured by any active conduct by defendant. No trap existed since the plaintiff was at least as familiar as the landlord with the condition of the fence which she voluntarily undertook to use as a means of access for her own, and not the landlord's, convenience. The plaintiff made no attempt to show the fence contained some faulty or dangerous condition. The evidence presents plaintiff's encounter with a known condition. While the jury is to decide whether a fifty year old woman is guilty of contributory negligence in climbing a four foot fence, they cannot convert a dangerous act into a dangerous condition.

It is not claimed that the defendant violated any duty owing to any licensee or trespasser and there was, therefore, no evidence upon which a verdict could ever stand, as announced in *Pedrick v. Peoria & Eastern Railway Co.,* 37 Ill.2d 494, 229 N.E.2d 504.

■■ The trial court erred in failing to direct a verdict for the plaintiff at the close of plaintiff's case since plaintiff failed to establish a duty on the part of the defendant and a necessary element of a cause of action is absent. Accordingly the judgment of the trial court must be reversed and it is so ordered.

Judgment reversed.

EBERSPACHER, J., concurs.

Mr. JUSTICE MORAN dissenting:

Generally, where a portion of the premises is reserved for common use and is under the landlord's control, a duty is imposed upon him to use ordinary care to keep such a portion of the premises in a reasonably safe condition. *Loveless v. Warner,* 37 Ill.App.2d 204.

Although in the present case the portion of the premises being used by plaintiff when she was injured was not reserved for the common use of all tenants, I can find no basis for relieving a landlord of his duty to keep such premises in a reasonably safe condition where he retains control of the unleased portion of the premises and permits or invites its use

to fewer than all the tenants, either expressly or impliedly from cutomary use, provided the premises are being used in the customary manner when the injury occurs. I find support for this position in 2 Restatement, Torts 2d, Section 360, which provides:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

See also 32 Am. Jur., Landlord and also *Rosmo v. Amherst Holding Co.*, 50 N.W.2d 698.

The evidence shows and the defendant does not dispute that she had retained control of the roof and fence used by the plaintiff on the day she was injured. Plaintiff had been going onto the roof periodically to wash her windows since before defendant bought the building in 1945. I believe that under these circumstances defendant owed plaintiff a duty of ordinary care to keep the roof in a reasonably safe condition. Whether defendant breached this duty by failing to provide safer access to the tarred portion of the roof was a question for the jury.

I would affirm the judgment of the trial court.