KIRK CORPORATION *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF BUFFALO GROVE, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3642

Opinion filed June 23, 1993.

Bloche, French & Raysa, P.C., of Oak Park (Richard D. Skelton and William G. Raysa, of counsel), for appellant.

Keck, Mahin & Cate, of Chicago (Donald G. Mulack and Brian Meltzer, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This case involves the scope and application of a zoning ordinance enacted by the Village of Buffalo Grove, Illinois (the Village), in 1974, wherein four parcels of land were rezoned for "special use" to accommodate a development of multiple-family dwelling units. Because none of the parcels was developed pursuant to the original ordinance, the Village subsequently rezoned three of the four parcels. A plan was then submitted to develop the remaining fourth parcel in accordance with the original zoning ordinance, which had been enacted 14 years prior.

After the Buffalo Grove Plan Commission (Plan Commission) rejected the plan, plaintiffs filed a two-count complaint for *mandamus*, declaratory and injunctive relief. A second amended complaint was then filed for specific performance, *mandamus* and declaratory relief. The trial court dismissed counts I and II of the complaint. Both parties then filed cross-motions for summary judgment on count III. Plaintiffs also filed a motion to strike defendant's exhibits. On November 1, 1991, the trial court granted plaintiffs' motion to strike as well as their motion for summary judgment, while denying defendant's summary judgment motion. A stay was granted pending appeal.

On November 24, 1974, the Village adopted Ordinance 74—22A, which provided for the rezoning of four parcels of land, known as parcels A, B, C, and D. The tracts were rezoned "special use" pursuant to the provisions of the 1961 zoning ordinance of Buffalo Grove, in order to allow the development of two separate planned unit developments (PUDs). Parcels A, B and C were to be developed as one PUD consisting of not more than 849 multiple-family dwelling units. An "illustrative Site Plan" for this proposed PUD was attached to Ordinance 74—22A as "Exhibit A." Parcel D was to be developed as a separate PUD consisting of not more than 241 townhouse units.

The PUDs were to be constructed in phases and the Village Board was to approve each phase upon a determination once it was determined that the plans for that phase were in "substantial compliance" with Ordinance 74—22A as well as other applicable village ordinances. Among the terms and conditions of Ordinance 74—22A, the owner or developer of the parcels was required to make certain contributions to the local school district based upon the number of building permits issued and, additionally, a certain golf course was to be conveyed to the Village.

Subsequently, the owner of the property, the Kirk Corporation, petitioned the Village to rezone parcels B, C and D to permit development in a manner different from that allowed by Ordinance 74—22A. Eight separate PUD ordinances were enacted governing the development of parcels B, C and D. Parcel B, originally zoned for multiple-family units, now contains several office buildings, a hotel, a restaurant and a furniture store. Parcel C, originally zoned for 252 apartments, was rezoned for luxury condominiums and townhouses. A new PUD was also approved for parcel D, changing its prior planned use from 241 townhouses to 151 single-family homes.

Parcel A has remained dormant since 1974. On May 2, 1988, the Kirk Corporation submitted a preliminary plan for the development of a portion of parcel A under Ordinance 74—22A. On November 2, 1988, following two meetings and a public hearing, the Village Plan Commission voted not to recommend approval of plaintiffs' preliminary plan. On November 21, 1988, the Buffalo Grove Village president and board of trustees (the Board) accepted the recommendation of the Plan Commission to disapprove the preliminary plan submitted by plaintiffs. On February 2, 1989, plaintiffs filed the instant action for declaratory relief.

Upon hearing arguments on both summary judgment motions, the trial court concluded that there existed no disputed issues of fact and that it would decide, as a matter of law, whether Ordinance 74—22A was still in effect and whether plaintiffs' plan conformed to the applicable provisions of the ordinance. In granting summary judgment for plaintiffs, the trial court made the following findings of law: (1) Ordinance 74—22A is valid and enforceable since it has never been repealed; (2) no case law supports the notion that a landowner's inaction invalidates an ordinance by abandonment; (3) a planned unit development (PUD) ordinance is a zoning ordinance, which represents a restriction on the use of the land, upon which a landowner has the right to rely; (4) a land use ordinance is justifiable only if it serves the public interest and if the public interest subsequently changes, the government must change the ordinance affirmatively; (5) throughout the 14 years of development on the adjoining parcels, Ordinance 74—22A was never repealed by the Village but was amended, and prior to this case the Village has never treated the ordinance as a nullity or abandoned; (6) a PUD is a concept unique and tailor-made for a particular tract of land and, once passed, it becomes the zoning law for that particular tract until formally repealed or amended; (7) the PUD for parcel A set forth in Ordinance 74—22A has never been changed and the landowner is entitled to have the development rights described

therein; (8) a PUD is hybrid zoning which is site particular and subsequent changes in the general zoning codes of the Village do not impact it (*e.g.*, the 1988 setback requirements in the Village code do not impact the setback requirements in Ordinance 74—22A); (9) if subsequent development of the adjoining parcels has caused a disharmony with the development of parcel A as originally planned, it was the duty of the Village to repeal Ordinance 74—22A and the landowner cannot be restricted because of the Village's inattention; (10) as a matter of law, plaintiffs have a right to have their preliminary plan reviewed in accordance with the only zoning applicable to parcel A, which is Ordinance 74—22A; and (11) the preliminary plan is substantially in compliance with Ordinance 74—22A, entitling plaintiffs to summary judgment.

On appeal, the Village argues that the special use approved for parcel A has lapsed or that it has been abandoned by plaintiffs. Moreover, the plan proposed by plaintiffs allegedly does not conform to the other applicable village ordinances. Finally, the Village argues that it can require planning approval for all of parcel A, not just that area covered in plaintiffs' proposed development plan. The main contention of plaintiffs is that the 1974 ordinance is still in full force and effect and governs parcel A, which it desires to develop, and additionally, development of parcel A in phases is permitted by Ordinance 74—22A.

■ Initially, we consider the proper standard of review to be applied by the trial court in reviewing the decision of the Village. The function of a trial court in a declaratory judgment action, challenging the application of a zoning ordinance to a specific property, is to conduct a trial *de novo*. (*Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 458 N.E.2d 575.) When reviewing a decision of a local zoning board, the trial court should treat the decision of the board as carrying a strong presumption of validity which can only be overcome by clear and convincing evidence that the application of the ordinance is unreasonable and arbitrary, bearing no substantial relation to public health, safety, morals or welfare. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183.

Instead of conducting a trial and weighing the evidence in support of or against the Board's decision, the trial court entered summary judgment for plaintiffs, finding as a matter of law the decision of the Board was against the manifest weight of the evidence. In so finding, the trial court concluded that the preliminary development plan rejected by the Board was in substantial compliance with the applicable zoning law.

Summary judgment is proper where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 514 N.E.2d 188.) Summary judgment is a drastic measure which should be allowed only when a moving party's right to relief is clear and free from doubt. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304.) Where the matter before the trial court can be decided as a question of law, the case is a proper one for summary judgment. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 422 N.E.2d 1146.) On review, this court must consider the summary judgment motions of both parties *de novo.*

Although both parties in this case argue on appeal that there exists no genuine issue of material fact and that the entire case rests upon questions of law, the summary judgment motion of plaintiffs and the response thereto by defendants present a vast array of factual issues which are material to the resolution of this dispute. The trial court found as a matter of law that Ordinance 74—22A was still the valid zoning ordinance governing the parcel in question and that plaintiffs complied with the ordinance by presenting a preliminary plan which conformed to the site plan attached to the ordinance.

Initially, we consider the validity of Ordinance 74—22A. This ordinance has never been repealed, nor has it been amended so as to affect parcel A, the subject of this dispute. The Village has argued to the trial court and on appeal that its own ordinance is invalid. However, in order to allow for development of the parcels which adjoin parcel A, in a manner inconsistent with the original PUD, the Village has chosen to repeal and amend certain sections of the ordinance, rather than repeal the ordinance wholesale. By its own actions, the Village has chosen to recognize and validate the continued existence of the ordinance, even during the 14-year time period wherein the Village claims the ordinance "expired" or was "abandoned." Where an interpretation of a zoning law has existed for many years of which a legislative body is aware, the law is presumed to be in accord with legislative intent where the language has not been amended. *Heerey v. Zoning Board of Appeals* (1980), 82 Ill. App. 3d 1088, 403 N.E.2d 617. .

As a secondary argument, the Village posits that the special use granted by the ordinance was revoked within one year of the discontinuation of the special use. The 1961 zoning ordinance of Buffalo Grove provides that "after special uses are discontinued for a period of more than one (1) year the building and land shall only be used for uses permitted in the zoning district in which said special use is lo-

cated." (Buffalo Grove, Ill., Zoning Ordinance, art. VI, par. 4.4 (1961).) However, Ordinance 74—22A does not set forth any timetable governing the development of the PUD. A concept plan is approved by the Village through the enactment of a PUD ordinance. A preliminary plan must then be submitted and, if approved, it is effective for a period of one year. During this time, the developer must apply for plat approval. If a plat has not been approved within one year, the preliminary plan must be resubmitted for approval.

In their motion for summary judgment, plaintiffs primarily argued that Ordinance 74—22A, which rezoned parcel A for multiple-family dwellings, had never been repealed or amended, and the subject property was still listed as R-9 (multiple-family units) on the Village zoning map. The 1974 ordinance authorized a planned development as a "special use" to be constructed around the Buffalo Grove golf course. The 1974 ordinance further incorporated and approved a site plan for the development, which was to be approved in phases. Section 2 of the 1974 ordinance provides that each phase of the planned development "shall be approved by the Village board if it is in substantial compliance with [the site plan] and provisions of said ordinance." Although "substantial compliance" is not defined by the ordinance, it is defined in Ordinance 73—39, which was effective in 1974. Section 6 of Ordinance 74—22A granted special use permits for the construction of the development which were never revoked by the Village.

Between 1981 and 1987, the Village amended or repealed sections of Ordinance 74—22A in order to allow the development of the other tracts governed by the ordinance. However, in 1986, the Village amended its comprehensive plan, designating the subject property, parcel A, as single-family residential property. The comprehensive plan sets forth the Village's goals and policies for future land use.

On May 2, 1988, Kirk presented a preliminary plan for the development of parcel A which allegedly substantially complied with the site plan set forth in Ordinance 74—22A. Plaintiffs further alleged in their motion that the Village denied approval of their plan because it only covered part of parcel A (phase 1) and no plan was presented for the remaining land in phase 2 of the development. According to Kirk, the Village's rejection of the plan prevented Kirk from proceeding to the next step, which was to prepare a development plan.

In a letter of November 2, 1988, the Village informed plaintiff that the Plan Commission delineated several reasons for rejecting the preliminary plan submitted. The primary reason for rejecting the plan was that Kirk presented a plan which covered only a portion of parcel A (phase 1), and it did not include the land on phase 2 of parcel A.

This portion of parcel A is now owned by another party, and absent a finding that this other party intends to develop the land in accordance with the PUD, the Village refused to accept Kirk's plan. The Village, however, did not state that the PUD had expired or the special use had been revoked.

■ Based upon the evidence presented, we find that Ordinance 74—22A is still the valid zoning ordinance governing parcel A. Moreover, the language of the ordinance provides for the development and approval of the parcel in phases. However, whether or not the Village properly rejected plaintiffs' preliminary plan is a question of fact to be properly decided by the trial court, after all of the evidence has been presented. The village zoning ordinance governing PUDs states that the Village may consider changed circumstances in the surrounding area as well as the impact of the plan on the community.

In *La Salle National Bank v. Village of Bloomingdale* (1987), 154 Ill. App. 3d 918, the trial court found that the disapproval of a site plan which technically complied with a PUD ordinance was unreasonable and inconsistent with the ordinance. The original PUD ordinance was enacted in 1973 and the land was partially developed in accordance with the ordinance. Plaintiffs then proposed the development of a shopping center on an area adjacent to single-family homes. At trial, both sides presented evidence as to the potential effect of the development on the surrounding neighborhood. The trial court held that plaintiff presented clear and convincing evidence that the proposed site plan complied with standards set forth in the PUD ordinance and that the zoning board's refusal to approve the plan was unreasonable.

On appeal, the appellate court found that the decision of the zoning board was a legislative and not an administrative act, since the ordinance reserved to the board the power to legislate zoning controls and set forth the procedure for approving PUD developments. As a legislative act, the decision of the board was found to carry a "presumption of validity which can only be overcome by clear and convincing evidence." The appellate court reversed, finding that the board was vested with discretionary power to disapprove the plan which it found to be incompatible with the surrounding area.

Likewise, in the instant case, the Village zoning ordinance of 1961 provides in pertinent part:

> "5.1 Planned Developments, as defined in Article II, are of such substantially different character from other special uses that specific and additional standards and exceptions are

hereby set out to govern the recommendations of the Plan Commission and the action of the Village Board of Trustees.

5.1—1 That the uses permitted by such exception are necessary or desirable and are appropriate with respect to the primary purpose of the development;

5.1—2 That the uses permitted by such exception are not of such a nature or so located as to exercise a detrimental influence on the surrounding neighborhood ***." (Buffalo Grove, Ill., Zoning Ordinance, §§5.1, 5.1—1, 5.1—2 (1961).)

Thus, the 1961 ordinance provides some planning standards which are to guide the Board in its approval of PUD plans. Moreover, Ordinance 74—22A states "the development shall be constructed in phases." The Village posits that the proposed plan for phase 1 cannot be approved since the land covered by phase 2 is now owned by a third party and no plans have been submitted regarding this property. This presents yet another factual issue to be considered by the trial court in deciding whether the decision of the Board was unreasonable. This further demonstrates why the entry of summary judgment in this case was premature. We cannot find as a matter of law that the phasal construction provisions prevent the development of phase 1 of the PUD.

In conclusion, we affirm the trial court's finding that Ordinance 74—22A, as a matter of law, is still valid. We reverse the finding that plaintiffs' plan had to be accepted as a matter of law by the Village. We affirm the denial of the Village's motion for summary judgment. We remand this cause for a trial, to allow both parties to present evidence on the issue of whether plaintiffs' plan should be approved. If plaintiffs present clear and convincing evidence that the decision of the Board was arbitrary or unreasonable, the trial court should grant plaintiffs declaratory relief. Absent such a finding, the decision of the Village should be upheld by the trial court and relief to plaintiffs denied.

Affirmed in part; reversed in part and remanded.

RIZZI and GREIMAN, JJ., concur.